**HEMISPHERE BUILDING COMPANY, INC., et al.,
Plaintiffs–Appellants,**

v.

**VILLAGE OF RICHTON PARK,
Defendant–Appellee.**

No. 98–1660.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1998.

Decided March 10, 1999.

John H. Doeringer (argued), Matteson, IL, for Plaintiffs–Appellants.

Richard T. Ryan, Mark F. Smolens, John Patrick Cleary, Flynn, Murphy & Ryan, Chicago, IL; John B. Murphey (argued), Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Defenant–Appellee.

Before POSNER, Chief Judge, and EASTERBROOK and KANNE, Circuit Judges.

POSNER, Chief Judge.

The Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.*, forbids discrimination against handicapped people in the sale or rental of housing. § 3604(f)(1). It also requires such "reasonable accommodations in rules, policies, practices, or services" as may be "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." § 3604(f)(3)(B). Both types of violation are charged in this suit by a developer against the Village of Richton Park, a suburb of Chicago. The Act does not mention municipalities, in fact does not say who may or may not be sued—it just says that "it shall be unlawful" to discriminate against the handicapped. § 3604. But the cases hold or assume, and the Village does not question, that the Act applies to municipalities, and specifically to their zoning decisions. E.g., *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995); *Erdman v. City of Fort Atkinson*, 84 F.3d 960 (7th Cir.1996); *Brandt v. Village of Chebanse*, 82 F.3d 172 (7th Cir.1996); *South–Suburban Housing Center v. Greater South Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir.1991); *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir.1998); *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir.1995); *United States v. City of Parma*, 661 F.2d 562, 572 (6th Cir.1981). The exemption for restrictions "regarding the maximum number of occupants permitted to occupy a dwelling," 42 U.S.C. § 3607, is inapplicable to this case because the restrictions at issue are on the number of residences per acre rather than the number of occupants per residence. *City of Edmonds v. Oxford House, Inc.*, *supra*, 514 U.S. at 734–35, 115 S.Ct. 1776.

The developer, who appeals from the grant of summary judgment to the Village, wanted to build two four-unit residences, specially designed to meet the needs of wheelchair-bound persons, on a lot that was slightly larger than an acre. The lot already had one single-family residence on it and, being zoned R–1, could not have more. The developer wanted the lot rezoned to R–4, which allows multiple-family residences but no more than 8.7 per acre. Because his plan contemplated a density of 9 dwelling units per acre, he applied not only for a rezoning but also for a special-use permit authorizing him to pierce the density ceiling if and when the lot was rezoned to R–4. 65 ILCS 5/11–13–1.1; Village of Richton Park Zoning Ordinance § 8.04(D) (Nov. 18, 1991). The Village Planning Commission approved both applications but the Village Board of Trustees,

which has the ultimate decision-making power, turned them down. It offered to rezone the lot to R–3, which would permit up to 7.3 dwelling units per acre. But that would have required the developer to scale back his planned construction from 8 units to 6 (remember that there was already a one-family home on the lot). He believed that with fewer units over which to spread the cost of the land, he would have to increase the price of the units from $90,000 to $100,000. He didn't think he could find buyers among the handicapped at that higher price, so he turned down the Village's offer.

■ There is no direct evidence (that is, no admissions) that in rejecting the developer's proposal the Village was actuated by a dislike of handicapped people. The developer asks us to infer discriminatory intent from the fact (he contends) that the Village had no good reason to turn him down, given the nature of the land uses in the vicinity of the lot. An apartment house with a density of 25 dwelling units per acre is located across the street from the lot. Also nearby is a small housing development on a lot that although zoned R–2 has, by virtue of a special use permit, a density of 8.67 dwelling units per acre. That is only slightly lower than the density proposed by our developer, though unlike his proposal it is within the density limit for lots zoned R–4.

The suggestion that these circumstances make the denial of the plan so anomalous as to support an inference of discrimination shows a misunderstanding of zoning. Unless a municipality prescribes a uniform density for all residential areas and refuses to grant any variances, there are certain to be adjacent residential developments that have different densities. If the fact that an adjacent lot had a higher density were a compelling ground for rezoning (whether directly or through special use permits), eventually all the residential areas of a municipality would be zoned for the highest density of any residential lot in the municipality. Eventually an apart-

ment house could be built on every lot in Richton Park.

■ This is a true slippery slope, and the Village is not required to step onto it. A standard argument against piecemeal rezoning is that by allowing the character of a neighborhood to change, it paves the way for further requests for rezoning, until the land-use plan that generated the zoning is completely eroded. See, e.g., *Arndorfer v. Sauk County Bd. of Adjustment*, 162 Wis.2d 246, 469 N.W.2d 831, 834 (1991); *City of Rutland v. McDonald's Corp.*, 146 Vt. 324, 503 A.2d 1138, 1141 (1985); *Otto v. Steinhilber*, 282 N.Y. 71, 24 N.E.2d 851, 853 (1939). Under Illinois law, a change in the nature of the surrounding land uses may *compel* a municipality to grant an application for rezoning or a special use permit, e.g., *Pioneer Trust & Savings Bank v. McHenry County*, 41 Ill.2d 77, 241 N.E.2d 454, 459 (1968); *La-Salle National Bank v. Lake County*, 27 Ill.App.3d 10, 325 N.E.2d 105, 111 (1975)— and the change might have been brought about by piecemeal rezoning, variances, and special use permits. A municipality can if it wants try to retard the erosion of its land-use plans by being chintzy about permitting departures from its existing zoning. So far as appears, that is all that is involved here, and it has nothing to do with hostility to handicapped people. The developer does not argue that surrounding areas have so far lost their single-family character that he was entitled to the relief he sought as a matter of state law; and anyway he is in the wrong court for making such an argument.

■ His second ground for appeal asks us, in the name of the accommodation provision of the federal Act, to balance the interest of Richton Park in adhering to its zoning ordinance, an interest for the reason just stated perhaps attenuated (though perhaps amplified) by the density of some of the adjacent residential areas, against the interest of handicapped people in being able to obtain housing suitable for their

special needs at the lowest possible price. That would be an unwieldy analytical task for a court to undertake, and the practical result might well be that builders for the handicapped could simply pay no attention to zoning ordinances—a result that, as pointed out in *Thornton v. City of Allegan*, 863 F.Supp. 504, 510 (W.D.Mich.1993), would cast the Fair Housing Amendments Act in the unlikely role of an engine for the destruction of zoning. Zoning may be good or bad, but the FHAA is not the charter of its abolition.

And zoning is not all that is at stake in the interpretation urged by the developer. To require consideration of handicapped people's financial situation would allow developers of housing for the handicapped to ignore not only the zoning laws, but also a local building code that increased the cost of construction, or for that matter a minimum wage law, or regulations for the safety of construction workers. Anything that makes housing more expensive hurts handicapped people; but it would be absurd to think that the FHAA overrides all local regulation of home construction. This is true whether the argument is made in the name of accommodation or—what for all practical purposes is the same thing, though it is confusingly treated as separate in some FHAA cases, see *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir.1998); *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir.1997)—in the name of disparate impact. Brian E. Davis, Comment, "The State Giveth and the Court Taketh Away: Preserving the Municipality's Ability to Zone for Group Homes Under the Fair Housing Amendments Act of 1988," 59 *U. Pitt. L.Rev.* 193, 205–06 (1997); Michael J. Kaufman, "Federal and State Handicapped Discrimination Laws: Toward an Accommodating Legal Framework," 18 *Loyola U. Chi. L.J.* 1119, 1132 (1987); cf. *EEOC v. United Parcel Service*, 94 F.3d 314, 317 n. 3 (7th Cir.1996). If a measure just happens quite without evil purpose to bear more heavily on a protected group than on other people, the defendant may be required to show that the measure is essential to his business and the discriminatory effect an unavoidable byproduct. E.g., *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1195–96 (7th Cir. 1997); 42 U.S.C. § 2000e–2(k) (codification of disparate impact standard for Title VII cases).

■ The result that we have called absurd is avoided by confining the duty of reasonable accommodation in "rules, policies, practices, or services" to rules, policies, etc. that hurt handicapped people *by reason of their handicap*, rather than that hurt them solely by virtue of what they have in common with other people, such as a limited amount of money to spend on housing. *Erdman v. City of Fort Atkinson, supra*; *Brandt v. Village of Chebanse, supra*; *Salute v. Stratford Greens Garden Apartments, supra*, 136 F.3d at 301–02; cf. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 604 (4th Cir.1997). A municipality that forbade builders to build showers that were flush with the bathroom floor, though it did so not because it wanted to make showers unusable by persons confined to wheelchairs but only because it wanted to reduce the risk of flooding the apartment below, would still be hurting only handicapped people. A developer could therefore seek an accommodation in the form of a waiver of the rule for housing intended for handicapped people, or, what is the equivalent, could argue that the municipality should be put to its proof that there is no reasonable alternative method of preventing serious flood damage. But a zoning ordinance that merely raises the cost of housing hurts everyone who would prefer to pay less and forgo whatever benefits the higher cost confers, and so need not be waived for the handicapped. *Brandt v. Village of Chebanse, supra*, 82 F.3d at 175. The difference between eliminating a discrimination against a group and compelling a subsidy for that group is familiar from cases of

reasonable accommodation or disparate impact under other antidiscrimination statutes. See, e.g., *Southeastern Community College v. Davis*, 442 U.S. 397, 407–12, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Dalton v. Subaru–Isuzu Automotive, Inc.*, 141 F.3d 667, 669 (7th Cir.1998); *Matthews v. Commonwealth Edison Co.*, supra, 128 F.3d at 1196; *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1051 (7th Cir.1996); *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1163 (7th Cir.1992); *Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998); *Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir.1997); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995).

The borderline case is *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1104–06 (3d Cir.1996), which involved a zoning restriction against nursing homes in residential areas. The court deemed nursing homes special-purpose facilities for the handicapped, *id.* at 1103 n. 3, and so it was as if the town had banned dogs and refused to make an exception for seeing-eye dogs. The ban was not complete because nursing homes could be built in areas that were zoned commercial. Nevertheless it was an explicit restriction on a facility for the handicapped; the density restriction at issue in this case is not. The cases would be analogous if the Township of Brick, while permitting nursing homes to be built anywhere, had a restrictive building code that made construction costs higher than in comparable areas. We believe that in that event *Hovsons* would have come out the other way.

It could be argued—it has been argued—that if handicaps cause poverty, financial concessions to the handicapped are accommodations. *Salute v. Stratford Greens Garden Apartments*, supra, 136 F.3d at 308–10 (dissenting opinion). But that would mean that handicapped people, in the name of reasonable accommodation, could claim a real estate tax rebate under the Fair Housing Amendments Act. To support so radical a result, something more than a spinning out of the logical implications of "reasonable accommodation" is necessary. We thus disapprove the district court cases in this circuit which have held that a city must, if requested by a handicapped person, waive its requirements for the installation of sprinklers because the requirements make homes more expensive for the handicapped—as for everyone. *Proviso Ass'n of Retarded Citizens v. Village of Westchester*, 914 F.Supp. 1555, 1561–63 (N.D.Ill.1996); *Alliance for the Mentally Ill v. City of Naperville*, 923 F.Supp. 1057, 1078 (N.D.Ill.1996).

AFFIRMED.