THE CORPORATION OF THE EPISCOPAL CHURCH IN UTAH; and the Helping Hand Association, d/b/a The Haven, Plaintiffs,

v.

WEST VALLEY CITY, a Utah municipal corporation; Jared Campbell, in his official capacity as Zoning Administrator of West Valley City and individually; Kevin G. Hooper, in his official capacity as West Valley City Planner and individually; and Gearld Wright in his official capacity as Mayor of West Valley City and individually, Defendants,

No. 2:98CV–00217ST.

United States District Court,
D. Utah,
Central Division.

Aug. 16, 2000.

Richard W. Casey, Giauque Crockett Bendinger & Peterson, Salt Lake City, UT, for the Plaintiffs.

Elliot R. Lawrence, West Valley City Attorneys Office, West Valley City, UT,

Jody K. Burnett, Williams & Hunt, Salt Lake City, UT, for the Defendants.

## ORDER

STEWART, District Judge. ·

This action is brought pursuant to the Fair Housing Act, 42 U.S.C. § 3601 et seq. ("the Act"). The Corporation of the Episcopal Church in Utah ("the Church") and the Helping Hand Association, d/b/a the Haven ("the Haven"), plaintiffs in the above entitled action, seek to enjoin West Valley City ("the City") from preventing the construction of Haven West, a proposed residential treatment facility for recovering drug addicts and alcoholics in a residentially zoned area of the City. Plaintiffs assert claims for discrimination pursuant to the Act, under theories of (1) discriminatory intent, (2) disparate impact, and (3) failure to make a reasonable accommodation. On July 13, 2000, a hearing was held on the parties' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. These cross motions deal with Plaintiffs' second and third claims. For the reasons set forth below, Defendants' motion for partial summary judgment is denied, and Plaintiffs' motion for summary judgment is granted.

## I. BACKGROUND

The property in question (the "Property"), is owned by the Corporation of the Episcopal Church and leased to the Helping Hand Association who would operate the facility as the Haven West. The property lies within an R–1–8 residential zone in West Valley City that provides for single family residences on lots of at least 8,000 square feet. Permitted uses in an R–1–8 zone include "Community Uses" which are defined by the West Valley City Land Use Act:

"Community Uses" means uses which have the primary purpose of serving the educational, recreational, religious or governmental needs of the community, in general. Such uses may include churches, public and private educational institutions, private nonprofit recreation grounds, public parks, public buildings, public facilities, cemeteries and other similar uses. This definition shall not include such uses as detention facilities, half-way houses, alcohol rehabilitation centers, and other similar uses.

The Haven is a not for profit organization which provides alcohol and drug rehabilitation services for residents of Salt Lake County. The Haven currently operates a facility in Salt Lake City. This facility is described as a "residential" home with its residents living at the facility for two to three months. There are currently seventeen residents in the home who are each responsible for upkeep and daily maintenance of the facility. Meals are provided by a cook during the week and the residents themselves on the weekends. There are no medical services provided but there are regular therapy sessions. The cost of the program is based on ability to pay and no one is disqualified for inability to pay. At any given time, approximately 40% of the residents are paying.

The record shows that there is currently a shortage of such treatment facilities in the Salt Lake Valley. It is undisputed that this need is especially great in and around West Valley City, as there are currently no residential treatment facilities for recovering addicts or alcoholics located anywhere in West Valley City. The Haven proposed to build a second facility, "Haven West" on the Property. This facility would house a maximum of seventeen residents for an average of two to three months. The Property was leased from the Church, and a new 7,000 square foot structure was to be built. The lease terms are very favorable to the Haven. In fact, the Haven asserts, and Defendants do not dispute, that it would not be able to build the facility elsewhere.

The Haven further asserts, uncontradicted, that it is essential that the proposed facility be located within a residential community. This is so because recovering addicts require a group envi-

ronment and such programs are most effective when those recovering are able to integrate back into a residential community. *See Oxford House v. Town of Babylon*, 819 F.Supp. 1179, 1183 (E.D.N.Y. 1993).

In early 1997, Plaintiffs met with City officials in an attempt to reach an agreement about the proposed Haven West. City representatives and City planners then told Plaintiffs that the proposed site was not appropriate and that the proposed facility would not be an allowable use in any residentially zoned area within the City.

In May, 1997, a conditional use application was filed with the City planner's office. The office refused to accept the application stating that the proposed structure and use were not permitted or appropriate within existing zoning. A building permit was also not accepted this same week, for the same reasons. Subsequently, a complaint was filed with the Utah Anti–Discrimination Division. This led to negotiations, after which the application was eventually accepted by the City.

The record shows that because of significant public interest, a public hearing was held in the matter. Although views for and against the site were expressed, the overwhelming majority of residents were strongly opposed to the facility, the opposition being based primarily on the nature of the residents and the threat they might pose to the community including a neighboring elementary school.

On September 26, 1997, the City zoning administrator denied the application. The reasons stated were that:

A. "Disabled status of any kind is not a factor in the City's analysis ... that status has no bearing on the City's consideration of the application."

B. The desirability of a treatment facility "is not relevant in an analysis of a potential land use or structure."

C. "Fears of possible threats to school children or the community are speculative and are not relevant to this analysis."

D. "[O]nly uses compatible with the residential character of the area are allowed in the zone, and building design should also be consistent with the overall character of the neighborhood."

E. "Under the Uniform Building Code, the proposed structure would be considered 'congregate housing' rather than a typical home."

F. "The application proposes to build and use a structure as a short-term rental facility or congregate housing, which is essentially a hotel ... which is not allowable at the proposed location."

An appeal followed to the Board of Adjustment, where, following another public hearing the decision was affirmed on December 3, 1997.

Plaintiffs filed the complaint in the present action on March 27, 1998, requesting an injunction permanently enjoining the City from preventing the construction and operation of Haven West at the proposed facility.

Subsequent to the filing of Plaintiffs' complaint, the City has admitted:

A. That it did not consider "any proposals, plans or ideas for accommodating Haven West and made no attempts to reasonably accommodate the location of, construction of, or operation of Haven West within a residentially zoned area of the City."

B. That it did not commission any studies, inquiries, or analysis to determine the impact of Haven West on the neighborhood.

C. That it did not identify any evidence that the residents of Haven West are more likely to engage in criminal activity than other residents of the community.

The City has at no time suggested that the construction and operation of Haven West would impose undue financial or administrative constraints on the City, or

that it would require a fundamental change in the nature of any program, or have an adverse impact on the surrounding neighborhood. The City has also not suggested that Plaintiffs' application would be approved if the size of the facility or the number of patients to be treated were modified.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All reasonable inferences and ambiguities are drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Overview of the Fair Housing Act

█ Under the Act, it is unlawful to discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap. 42 U.S.C. § 3604(f)(1). A person is handicapped if he or she has a mental or physical impairment. 42 U.S.C. § 3602(h). It is well established that individuals recovering from drug or alcohol addiction are handicapped under the Act. *See United States v. Southern Management Corp.*, 955 F.2d 914, 917–923 (4th Cir.1992); *Elliott v. City of Athens*, 960 F.2d 975, 977 (11th Cir.1992); *Oxford House, Inc. v. Township of Cherry Hill*, 799 F.Supp. 450, 458–60 (D.N.J.1992); *Oxford House, Inc. v. Town of Babylon*, 819 F.Supp. 1179, 1182 (E.D.N.Y.1993). A plaintiff can establish a violation under the Act by proving the disparate impact of a practice or policy on a particular group,

*Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 933 (2d Cir.), *aff'd*, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988), or by showing that the defendant failed to make reasonable accommodations in rules, policies, or practices so as to afford people with disabilities an equal opportunity to live in a dwelling. 42 U.S.C. § 3604(f)(3)(B). Once a violation is established under the Act, the plaintiff is entitled to injunctive relief. *See Southern Management Corp.*, 955 F.2d at 923.

### C. Plaintiffs' Disparate Impact Claim

█ To establish a prima facie case of disparate impact, a plaintiff must prove that the challenged practice "actually or predictably" results in discrimination. *See Huntington Branch, NAACP*, 844 F.2d at 933. Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to prove that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve the interest with less discriminatory effect." *Id.* at 936 (*citing Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 148–49 (3d Cir.1977)).

In the end, the court must balance the plaintiff's showing of discriminatory impact against the defendant's justifications for its conduct. *See Huntington Branch, NAACP*, 844 F.2d at 936. When conducting this balance, two factors weigh heavily in the plaintiff's favor: (1) evidence of discriminatory intent on the part of the defendant; and (2) evidence that the plaintiff is seeking only to require a municipal defendant to eliminate an obstacle to housing rather than suing to compel it to build. *Id.* (*citing Metropolitan Hous. Dev. Corp. v. Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977)).

█ Disparate impact claims "are premised on policies or practices which are adopted without a discriminatory motive but which are functionally equivalent to intentional discrimination." *Mountain Side Mobile Estates v. Secretary of HUD*, 56 F.3d 1243, 1251 (10th Cir.1995). A

plaintiff alleging disparate impact must prove actual discriminatory effect and may not rely on allegations or inference. An evaluation of disparate impact requires comparison with other similarly sized groups living together. *See Gamble v. City of Escondido,* 104 F.3d 300, 306–07 (9th Cir.1997). Thus, in order to establish a prima facie case of disparate impact, Plaintiffs must make an actual showing, not mere conjecture, that they have been treated differently than similarly situated groups.

Plaintiffs argue that because recovering addicts must live in group homes in residential neighborhoods for their treatment to be successful, and because the City has effectively prevented these homes in all residential neighborhoods, a disparate impact is clearly established. As noted by Defendants, however, this obscures the crucial point, namely whether there is actual evidence that they have been treated differently than similarly situated groups. *See Gamble v. City of Escondido,* 104 F.3d 300, 306–07 (9th Cir.1997) ("The relevant comparison group to determine a discriminatory effect on the physically disabled is other groups of similar sizes living together. Otherwise, all that has been demonstrated is a discriminatory effect on group living"); *Doe v. City of Butler,* 892 F.2d 315, 323 (3rd Cir.1989) (must show discriminatory effect as compared to other similarly situated groups, if all group living is discriminated against regardless of whether handicapped, not actionable). *See also, Hemisphere Building v. Richton Park,* 171 F.3d 437, 440 (7th Cir.1999) (adverse impact on handicapped insufficient to show disparate impact, must be in relation to those similarly situated).

Plaintiffs have made no such showing in the present case. To the contrary, Plaintiffs have conceded that all group homes, including sorority houses, would be excluded from the zone at issue. Such an assertion makes clear why Plaintiffs' claim for disparate impact must fail. As stated above, such a claim requires an *actual* showing that Plaintiffs have been treated differently than other similarly situated groups. Plaintiffs have provided no evidence, and the court is aware of none, suggesting that the City's permit denial practices disproportionately affect disabled group living as opposed to other kinds of group living. *See Gamble,* 104 F.3d at 307. As such, Plaintiffs have failed to make the necessary prima facie showing to survive summary judgment on this claim.

D. Plaintiffs' Claim that Defendants Failed to Make Reasonable Accommodations Necessary to Permit Handicapped Persons to Use and Enjoy a Dwelling

Under the Act, it is a discriminatory practice to refuse to make "a reasonable accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Courts have unanimously applied the reasonable accommodations requirement to zoning ordinances and other land use regulations and practices. *See Township of Cherry Hill,* 799 F.Supp. at 462–63; *Town of Babylon,* 819 F.Supp. at 1180; *Horizon House Developmental Services, Inc. v. Township of Upper Southampton,* 804 F.Supp. 683, 699–700 (E.D.Pa.1992); *Stewart B. McKinney Foundation, Inc. v. Town Plan & Zoning Comm'n of the Town of Fairfield,* 790 F.Supp. 1197, 1221 (D.Conn.1992); *United States v. Village of Marshall,* 787 F.Supp. 872, 878 (W.D.Wis. 1991); *Oxford House–Evergreen v. City of Plainfield,* 769 F.Supp. 1329, 1344–45 (D.N.J.1991); *United States v. Commonwealth of Puerto Rico,* 764 F.Supp. 220, 224 (D.P.R.1991). Reasonable accommodation has been defined as "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual." *Bangerter v. Orem City,* 46 F.3d 1491, 1502 (10th Cir.1995).

In determining this often difficult question, a court must resolve the necessary tension between a municipality's right to control land uses through neutral regu-

lation, and its duty to make reasonable accommodations for the handicapped under the Act. *See Bryant Woods Inn v. Howard County, Maryland,* 124 F.3d 597, 603 (4th Cir.1997). Land use planning and the adoption of land use restrictions constitute some of the most important functions performed by local government. *See, FERC v. Mississippi,* 456 U.S. 742, 768, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982). In enacting the Act, Congress did not contemplate abandoning the deference that courts have traditionally shown to local zoning codes. *See Bryant Woods,* 124 F.3d at 603; *Oxford House, Inc. v. City of Virginia Beach,* 825 F.Supp. 1251, 1261 (E.D.Va.1993). Thus, Congress required only that local government make "reasonable accommodation" to afford persons with handicaps "equal opportunity to use and enjoy" housing in those communities. 42 U.S.C. § 3604(f)(3)(B).

The Act thus requires an accommodation for persons with handicaps if the accommodation is (1) reasonable and (2) necessary (3) to afford handicapped persons equal opportunity to use and enjoy housing. 42 U.S.C. § 3604(f)(3); *See Bryant Woods,* at 603.

> In determining whether the reasonableness requirement has been met, a court may consider as factors the extent to which the accommodation would undermine the legitimate purposes and effects of existing zoning regulations and the benefits that the accommodation would provide to the handicapped. It may also consider whether alternatives exist to accomplish the benefits more efficiently. And in measuring the effects of an accommodation, the court · may look not only to its functional and administrative aspects, but also to its costs. "Reasonable accommodations" do not require accommodations which impose undue financial and administrative burdens ... Or changes that would constitute fundamental alterations in the nature of the program.

*Id.* at 604.[1]

Defendants argue that the accommodation requested by Plaintiffs is unreasonable in that it would require a drastic change in policy. Defendants cite to *Bryant Woods, Gamble,* and *Hemisphere Building, supra,* for support. In all of those cases, however, the municipalities cited nondiscriminatory reasons for their decisions such as traffic, congestion, and costs. All of these decisions were supported by evidence of such problems, and how the changing of the zoning ordinances would exacerbate these problems.

■ In the present case, no evidence whatsoever has been established other than complaints of neighbors. Regardless of who bears the burden here, it is clear that the City has made no attempt to accommodate this facility. In fact, the decision was made to deny the permit for the facility before the application was even received. As noted by the Third Circuit in *Hovsons, supra:*

> The Township['s] blanket exclusion of nursing homes from its residential areas in general, and its refusal to permit the construction of the specific facility in question, is precisely the sort of isolation of handicapped persons from the mainstream of society that the [Act] was enacted to forbid. Furthermore, there is a dearth of evidence in the record to support [the Township's] sweeping claim as to the fundamental incompatibility of nursing homes in residential areas in general and in [the zone] in particular.

*Id.* at 1103.

On the other hand Plaintiffs have asserted that there is a great need for Haven

---

1. There is a circuit split on the question of which party bears the burden of showing if an accommodation is reasonable. Most circuits place the burden with the plaintiff. *See Bryant Woods,* at 604. The Third Circuit, however, places the burden with the defendant. *See Hovsons v. Township of Brick,* 89 F.3d 1096 (3rd Cir.1996). The Tenth Circuit has not spoken on this issue. The court finds it unnecessary to decide this, however, as even if the burden is on Plaintiffs, it has clearly been met. This is so because Defendants have made absolutely no attempt to accommodate Plaintiffs.

West to be a group facility located in a residential neighborhood. Those recovering from addiction have been shown to benefit from living with others in similar situations, and their presence in residential neighborhoods allows the recovering individuals to re-integrate into the community at large. *See Town of Babylon* at 1181. It thus appears that there is currently no other way for recovering addicts who require this facility to receive housing in West Valley City.

The City argues that Plaintiffs did not return to the City with another alternative for the City to consider following the City's rejection of Plaintiffs' proposal. This raises the question of who has the burden to suggest an accommodation? That is, if the City rejects the request of Plaintiffs, must the City suggest an alternative, or may it rest on its laurels until Plaintiffs suggest an alternative and the City then respond to it, until such time Plaintiffs come up with an alternative that the City finds acceptable, at which point it has "accommodated" Plaintiffs? If the latter, would this constitute an accommodation on the part of the City, or in reality, an accommodation on the part of Plaintiffs?

The Act is not entirely clear on this point. However, a literal reading of the Act implies that the accommodation must be initiated by the City. The Act speaks in terms of the duty of the City to make "a reasonable accommodation in rules, policies, practices, or services when such accommodation may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a "dwelling."" 42 U.S.C. § 3604(f)(3)(B). Accordingly, the court finds that the responsibility rested with the City to initiate and make the accommodation of Plaintiffs, something it admittedly did not do. *See Bryant Woods,* 124 F.3d at 601–02 ("While the county must be afforded an opportunity to make a final decision, the issue is sufficiently concrete for judicial resolution once an accommodation is denied.... Under the Fair Housing Act ... a violation occurs when the disabled resident is first denied a reasonable accommodation, irrespective of the remedies granted in subsequent proceedings.")

Therefore, the court finds that Defendants denial of Plaintiffs' permit violates 42 U.S.C. § 3604(f)(3)(B). The court will grant Plaintiffs motion for summary judgment in so far as the City has an obligation to make a reasonable accommodation and has failed to do so. In fact, the record does not reflect that any accommodation has been made by either side. In addressing the issue of reasonable accommodation under the Americans with Disabilities Act, the Tenth Circuit has held that this is intended to be an interactive process that requires participation by both parties. *See Smith v. Midland Brake,* 180 F.3d 1154, 1171 (10th Cir.1999). The court finds that such a process would be most appropriate in the present case and thus orders the parties to work to reach an agreement and report back within sixty (60) days. If no agreement is reached within that time the court will enter such additional order as it deems necessary.

## III. CONCLUSION

For the reasons set forth above, Defendants' motion for partial summary judgment is denied and Plaintiffs' motion for summary judgment that Defendants have failed to make a reasonable accommodation as required by 42 U.S.C. § 3604(f)(3)(B) is granted. The parties are hereby ordered to report back to the court within sixty (60) days as to whether an agreement for accommodation has been reached. If none is reached within that time the court will enter such additional order as it deems necessary.