Thomas J. GALLAGHER, et al., Appellants

v.

Steve MAGNER, individually and as a supervisor of City of St. Paul's Department of Neighborhood Housing and Property Improvement, et al., Appellees.

Frank J. Steinhauser, III, et al., Appellants

v.

City of St. Paul, a municipal corporation, et al., Appellees.

Sandra Harrilal, Appellant

Bee Vue and Lamena Vue

Steven R. Johnson, doing business as Market Group and Properties, Appellant

v.

Steve Magner, individually and as a supervisor of City of St. Paul's Department of Neighborhood Housing and Property Improvement, et al., Appellees.

Nos. 09–1209, 09–1528, 09–1579.

United States Court of Appeals, Eighth Circuit.

Nov. 15, 2010.

Matthew Allen Engel, Aase & Kirscher, St. Paul, MN, John R. Shoemaker, Shoemaker & Shoemaker, PLLC, Bloomington, MN, for Appellants.

Louise Toscano Seeba, Assistant, City Attorney's Office, St. Paul, MN, for Appellees.

Bee Vue, Wyoming, MN, pro se.

Lamena Vue, Wyoming, MN, pro se.

## ORDER

The petition for rehearing *en banc* is denied. The petition for rehearing by the panel is also denied.

COLLOTON, Circuit Judge, with whom RILEY, Chief Judge, LOKEN, GRUENDER and SHEPHERD, Circuit Judges, join, dissenting from denial of rehearing en banc.

The panel opinion in this case holds that the owners of rental property in St. Paul, Minnesota, have presented a submissible case that the City of St. Paul violated the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, by aggressively enforcing the City's housing code. *Gallagher v. Magner,* 619 F.3d 823 (8th Cir.2010). Even though there is insufficient evidence to infer that the City acted with intent to discriminate against any person in violation of the FHA, *id.* at 833, the panel reasoned that the City can be liable for its enforcement of the housing code, because enforcement of the housing code increased costs for property owners, the increased costs reduced the supply of "affordable housing" in the City, and the reduction of supply had a "disparate impact" on racial minorities. *Id.* at 835.

I would grant the City's petition for rehearing en banc. The petition raises important questions concerning whether "aggressive" enforcement of a housing code is the sort of facially neutral policy that can trigger disparate-impact analysis under the FHA, whether the plaintiffs have shown that particular aggressive enforcement practices actually caused a disparate impact on racial minorities seeking to rent property in St. Paul, and whether the property owners have presented sufficient evidence that a less aggressive enforcement program known as "PP2000"—which had a success rate of only seventy percent with the limited sample of properties included in the program (R. Doc. 219, Attach. 4, at 34–35)—would be equally effective as, and no more costly than, the "heavy enforcement" and "code to the max" approach that was adopted citywide by the responsible policymakers and challenged by the property owners in this litigation. *See generally Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 660–61, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.,* 342 F.3d 871, 883 (8th Cir.2003); *cf. Smith v. City of Jackson,* 544 U.S. 228, 240, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (concluding that *Wards Cove's* pre–1991 explanation of disparate-impact analysis remains applicable to a statute with identical text as Title VII that was not amended along with Title VII in 1991).

In addition to these questions, the panel's expansive rationale raises significant threshold issues concerning the application of disparate-impact analysis in this context. These issues likely warrant supplemental briefing by the parties and careful consideration by the court.

First, it would be useful for the en banc court to examine the basis for disparate-impact analysis under the FHA. In applying disparate-impact analysis, the panel opinion never mentions the text of the governing statute. The provisions cited by the panel provide that:

[I]t shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race,

color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a)-(b).

The Supreme Court has not decided whether the FHA allows for recovery based on a disparate-impact theory. *Town of Huntington v. Huntington Branch, NAACP*, 488 U.S. 15, 18, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988) (per curiam). In 1974, a panel of this court, also without discussing the text of 42 U.S.C. § 3604, held that a plaintiff advancing a claim under the FHA need prove only that the conduct of a defendant had a "discriminatory effect," and thereby introduced disparate-impact analysis under the FHA. *United States v. City of Black Jack*, 508 F.2d 1179 (8th Cir.1974). The court relied on the "purpose" of the FHA and reasoned by analogy to the Supreme Court's decision in *Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which applied disparate-impact analysis to a claim of employment discrimination under Title VII of the Civil Rights Act. *See Black Jack*, 508 F.2d at 1184.

Since then, the Supreme Court has acknowledged that the "opinion in *Griggs* relied primarily on the purposes of the Act." *Smith*, 544 U.S. at 235, 125 S.Ct. 1536 (plurality opinion); *id.* at 243, 125 S.Ct. 1536 (Scalia, J., concurring in part and concurring in the judgment) (agreeing with all of the plurality's reasoning, but resolving the case based on deference to the reasonable views of the administering federal agency). Significantly, however, the Court explained that the holding in *Griggs* also "represented the better reading of the statutory text," because the language of § 703(a)(2) of Title VII prohibits actions directed at employees that "deprive any individual of employment opportunities *or otherwise adversely affect* his status as an employee, because of such individual's race." *Id.* at 235, 125 S.Ct. 1536 (plurality opinion) (internal quotations omitted); *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (concluding that subjective employment practices may be analyzed under the disparate-impact approach of Title VII because they "may be said to 'adversely affect [an individual's] status as an employee, because of such individual's race, color, religion, sex, or national origin' ") (alteration in original) (quoting 42 U.S.C. § 2000e–2(a)(2)).[1]

In 2005, the Supreme Court held that a disparate-impact theory is cognizable under the Age Discrimination in Employment Act ("ADEA"). The Court emphasized that § 703(a)(2) of Title VII at issue in *Griggs*, and § 4(a)(2) of the ADEA,

---

1. Section 703(a) of Title VII provides as follows:

It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a).

include "identical text," namely, a prohibition on "limiting, segregating, or classifying employees in any way which would . . . adversely affect [an individual's] status as an employee, because of such individual's" race or age. *Smith*, 544 U.S. at 236, 125 S.Ct. 1536 (plurality opinion). But the Court cited "key textual differences" between § 4(a)(1) of the ADEA, which makes it unlawful "to fail or refuse to hire . . . any individual . . . because of such individual's age," and does *not* encompass disparate-impact liability, and § 4(a)(2), which does authorize recovery based on disparate impact. *Id.* at 235–36 & n. 6, 125 S.Ct. 1536 (omissions in original) (internal quotations omitted).[2] The Supreme Court also has said that another important civil rights statute, Title VI of the Civil Rights Act, forbids only intentional discrimination, and does not prohibit actions taken with nondiscriminatory motive that have a disparate impact on racial groups. *See Alexander v. Sandoval*, 532 U.S. 275, 280–81, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). In contrast to Title VII and the ADEA, the text of Title VI does not proscribe activities that would "adversely affect" a person because of a protected characteristic. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

The FHA likewise does not include text comparable to that relied on in *Smith* and appearing in § 703(a)(2) of Title VII and § 4(a)(2) of the ADEA. Rather, the text of 42 U.S.C. § 3604(a) makes it unlawful to "make unavailable or deny . . . a dwelling to any person because of race, color, religion, sex, familial status, or national origin." This language appears similar to § 4(a)(1) of the ADEA, which the Court in *Smith* said does not support a claim based on disparate impact alone. 544 U.S. at 236 n. 6, 125 S.Ct. 1536 (plurality opinion).

To be sure, most of the circuits have applied disparate-impact analysis under the FHA, and perhaps that approach is justified. Some district courts have ruled after the Supreme Court's decision in *Smith* that disparate-impact analysis remains applicable to the FHA. *E.g., Nat'l Comm. Reinvestment Coalition v. Accredited Home Lenders*, 573 F.Supp.2d 70, 77–79 (D.D.C.2008). But there has been little consideration in this circuit of the textual basis for this theory of liability, and virtually no discussion of the matter by any court of appeals since the Court in *Smith* explained how the text of Title VII justified the decision in *Griggs*. The district court and the parties understandably have taken disparate-impact analysis as a given under circuit precedent, but recent developments in the law suggest that the issue is appropriate for careful review by the en banc court.

Second, if disparate-impact analysis should be applied to claims under the FHA based on the "purpose" of the statute, *see Black Jack*, 508 F.2d at 1184, then it seems appropriate to consider whether the

---

**2.** Section 4(a)(1)-(2) of the ADEA provides as follows:

It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.
29 U.S.C. § 623(a)(1)-(2).

purpose of the statute extends to declaring a city liable for disparate impact caused by its "aggressive" enforcement of a housing code. The Seventh Circuit, while applying a disparate-impact theory to evaluate a city's refusal to rezone property when such refusal had the consequence of perpetuating segregation in housing, refused at the same time to conclude that every action that produces discriminatory effects is illegal. *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977). "Such a per se rule," the court thought, "would go beyond the intent of Congress and would lead courts into untenable results in specific cases." *Id.; see Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272, 1280 (7th Cir.1995) (explaining that "disparate impact analysis is not appropriate in certain contexts"). The Tenth Circuit in *Reinhart v. Lincoln County*, 482 F.3d 1225 (10th Cir.2007), "recognize[d] that one court has suggested that a disparate-impact claim based solely on increased costs is not cognizable under the FHA," *id.* at 1230 (citing *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir.1999)), but found it unnecessary to decide the point. This case appears to present that unresolved question.

This court has applied disparate-impact analysis in certain contexts under the FHA, such as where a city adopted a zoning ordinance that prohibited the construction of any new multiple-family dwellings likely to be occupied by racial minorities, thus perpetuating a history of segregated housing, *see Black Jack*, 508 F.2d at 1184–85, and where a landlord refused to rent an apartment to a qualified minority applicant despite offering to rent the same type of unit to comparable white applicants. *See Smith v. Anchor Bldg. Corp.*, 536 F.2d 231, 233 (8th Cir. 1976). But whether the panel's application of disparate-impact analysis to a city's aggressive housing code enforcement is dictated by the purpose of the FHA is an important question of first impression.

For these reasons, I would grant the City's petition for rehearing en banc.