NOT DESIGNATED FOR PUBLICATION

No. 122,244

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BOARD OF COUNTY COMMISSIONERS
OF JOHNSON COUNTY, KANSAS,
*Appellant*,

v.

DOUG JORGENSEN,
STATE FIRE MARSHAL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court, JAMES F. VANO, judge. Opinion filed June 4, 2021. Appeal dismissed.

*Robert A. Ford*, assistant county counselor, for appellant.

*Dwight R. Carswell*, assistant solicitor general, *Toby Crouse*, solicitor general, *Brant M. Laue*, deputy solicitor general, *AnnLouise Fitzgerald*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellee.

*Michael J. Norton* and *Nathaniel W. Mannebach*, of Foulston Siefkin LLP, of Wichita, for amicus curiae InterHab Inc.

Before GARDNER, P.J., GREEN and BUSER, JJ.

PER CURIAM: The Board of County Commissioners of Johnson County (Board) contends that the State Fire Marshal's adoption and enforcement of the National Fire Protection Association's Life Safety Code (Code) exceeds its statutory jurisdiction under Kansas law and violates the federal Fair Housing Amendments Act (FHAA). But we lack

1

jurisdiction to reach the merits of these issues as the district court has not yet entered a final order in the case.

*Factual and Procedural Background*

We note at the outset that the record contains few facts. It consists largely of letters, emails, or filings by the parties containing assertions or suggestions of fact by counsel. We generally summarize the facts and arguments below, as the details are unnecessary to our determination.

The Board asserts that, through Johnson County Developmental Support (JCDS), it operates group homes where individuals with physical or intellectual disabilities reside. The Fire Marshal issued citations to two group homes in March 2018 for violating the Code's enhanced fire prevention measures. That Code, as adopted into Kansas law, does not apply to "buildings used wholly as dwelling houses containing no more than two families," K.S.A. 2020 Supp. 31-133(a)(3), but applies to residential homes that board four or more unrelated residents if the homes provide "personal care services," K.A.R. 22-1-3 (q) (adopting "life safety code. NFPA standard no. 101, including annexes A and B, 2006 edition").

The only notices in the record on appeal stem from the inspections of two JCDS homes in Olathe and Gardner. Those notices required JCDS to make certain changes to their properties to comply with the Code. Those changes included:

- Installing half-hour fire walls, a manual fire alarm box, interconnected smoke alarms, and a sprinkler system in the Olathe home; and
- Completing installation of a sprinkler system in the Gardner home, adding sprinkler heads in the closets.

2

The Fire Marshal's notice requiring the addition of a sprinkler system in the Olathe group home referenced a year-old fire drill where its residents took 17 minutes to evacuate. The Code requires buildings converted from single-family residences to residential board and care occupancies to install sprinklers unless the building has eight or fewer residents and "all occupants have the ability as a group to move reliably to a point of safety within 3 minutes." NFPA 101, Life Safety Code § 32.2.3.5.2 (2006 ed.). The Fire Marshal asserts that the Code's sprinkler safety requirement is narrowly tailored to the group home's demonstrated lack of ability to safely evacuate. See *Alliance for the Mentally Ill v. City of Naperville*, 923 F. Supp. 1057, 1064 (N.D. Ill. 1996) ("By distinguishing between new and existing [Residential Board and Care Occupancy (RBCO's)], between small and large RBCO's, and between RBCO's with prompt, slow, and impractical evacuation capabilities, the drafters of the [Code] consciously sought to balance the documented need for fire protection against the burden that enhanced fire protection measures might impose on RBCO's."), *abrogated on other grounds by Hemisphere Bldg. Co. v. Village of Richton Park*, 171 F.3d 437 (7th Cir. 1999). The Board counters that four college students living together would not have to install a sprinkler system in their residence, so the Code's requirement that group homes do so is discriminatory.

The owner of the Olathe group home apparently refused to install the sprinkler system as requested. So until a sprinkler system was installed, the Fire Marshal required a second staff member in the home to be on "fire watch," as the Code requires. The Board asserts that it spent around $30,000 during 2018 to meet that staffing requirement, that it tried to work with the Fire Marshal to address his concerns outside formal proceedings, and that it tried to reduce the tenants' fire-drill evacuation time. But the record shows no evacuation time other than 17 minutes, and the Fire Marshal did not find the evacuation efforts effectively addressed the issue or complied with the Code.

3

*Proceedings at the Agency Level*

After informal negotiations fell through, the Board requested an accommodation—complete exemption of group homes from the Code. The Board requested an accommodation under the FHAA and, alternatively, sought a waiver from the Kansas Fire Protection Code's enhanced requirements, asking the Fire Marshal to treat the group homes as single-family dwellings.

The Fire Marshal denied the Board's request for a categorical exemption from the requirements of the Code. But the Fire Marshal informed the Board that it could submit a new request for a waiver under K.S.A. 31-136 if it could show "that enforcement of specific requirements of any rule or regulation or any specific provision of the Life Safety Code will cause unnecessary hardship." The letter also included a notice of the Board's right to petition for reconsideration and for judicial review.

The Board responded by moving for reconsideration and attaching an affidavit by JCDS's executive director, Chad VonAhnen. Among other matters, he described the tenants' living arrangement as family-like, pointing out that they engaged in group dining and recreation, cared for the home together, and shared emotional bonds.

The Fire Marshal denied the Board's motion for reconsideration, finding the Board failed to allege a mistake of law or facts warranting reconsideration. It found the Board showed no facts to support its assertion that the accommodation was necessary to prevent private landlords from refusing to participate in its Residential Services program. And the Fire Marshal found that the Board failed to show facts to establish that the residents of its facilities should be treated as a family, citing *Oxford House, Inc. v. Browning*, 266 F. Supp. 3d 896, 914 (M.D. La. 2017) (accepting expert testimony that the self-sufficiency, program design, and mutual accountability of the Oxford House model imposes a traditional family-like hierarchy that aids in "the safe evacuation of the structure in the

4

event of a fire"). The Fire Marshal declined to consider VonAhnen's affidavit and other matters that were not part of the record before the agency when it made its decision. See K.S.A. 77-620(a) (requiring inclusion of documents agency considered and filed before it made the decision being challenged in the district court).

*District Court Proceedings*

After the Fire Marshal denied the Board's motion for reconsideration, the Board petitioned for judicial review by the district court. See K.S.A. 2020 Supp. 31-142 ("Any action of the state fire marshal pursuant to K.S.A. 31-140, and amendments thereto, is subject to review in accordance with the Kansas judicial review act."). The Board's petition for review stated three counts:

- Count 1, brought under the Kansas Judicial Review Act (KJRA), alleged that the Fire Marshal lacked jurisdiction to adopt the Code and to impose it on group homes.
- Count 2 alleged that the Fire Marshal, by imposing the Code on group homes, discriminated against individuals with a handicap in violation of the FHAA.
- Count 3 alleged a violation of the Equal Protection Clause.

The Board then filed a brief (which it called a "petition for declaratory relief") seeking relief under K.S.A. 77-621(c)(2) and (c)(4). Those provisions of the KJRA state that the district court "shall grant relief only if it determines" that "the agency has acted beyond the jurisdiction conferred by any provision of law"; or "the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c)(2), (c)(4).

The Fire Marshal responded by moving to transfer venue to Shawnee County, and moving to strike the Board's brief, arguing that a "declaratory judgment" was improper in

5

a KJRA proceeding. The district court denied both motions and ordered the Fire Marshal to respond to the Board's brief within 30 days. When the Fire Marshal failed to do so, the district court granted the Board default judgment on Count 1 of its petition—its claim that the Fire Marshal lacked jurisdiction over the group homes under state law. But the court later vacated its default ruling and granted the Fire Marshal another 30 days to respond.

After the Fire Marshal filed its brief, the district court held a hearing on the issues briefed by both parties—Counts 1 and 2 of the Board's petition. It expressly noted that it did not address the equal protection issue (Count 3) because the proceedings had been bifurcated.

Consistently, at the hearing in the district court, the parties argued only Counts 1 (KJRA) and 2 (FHAA) of the Board's petition, but not Count 3 (Equal Protection). The Board argued that the Fire Marshal's act of adopting the Code was unauthorized or otherwise precluded by state and federal law, and that the enhanced fire prevention measures were discriminatory as applied to group homes whose residents were individuals with handicaps. These arguments centered on the Fire Marshal's classification of the group homes as residential board and care facilities based on the residents' needs for "personal care services."

The Fire Marshal countered that the Board had failed to meet its burden to show invalidity of agency action, had not provided evidence supporting its claims, and had failed to show that the Fire Marshal's acts violated the FHAA. He argued that the FHAA caselaw the Board had submitted was distinguishable because it dealt with zoning laws for anticipated homes, not fire safety in existing homes. He admitted that he never notified the Board of its right to request a hearing on the matter, and that no hearing had been held.

When the district court realized that the parties had never had a hearing at the agency level, it asked them if they wanted it to remand the case for a hearing and if doing so was appropriate under the KJRA. The Fire Marshal replied that remand was an appropriate option, but that he wanted dismissal rather than a remand because the Board had not met its burden to show the invalidity of agency action. The Board replied that in its letter requesting an accommodation from the Fire Marshal, it had requested a hearing if the Fire Marshal decided to deny its accommodation request.

The Board then argued that it did not have to go through state administrative procedures because the Fire Marshal lacked jurisdiction over the group homes, that K.S.A. 31-136 is not part of this case and the FHAA is, and that the Fire Marshal could have held a hearing if it had wanted one. The Board summed up its position on its discrimination claims by saying: "I think the facts—the facts here, Judge, aren't really that critical. It's kind of a decision that can be made in a vacuum. Can you discriminate against disabled individuals in connection with single-family residential housing?" It noted that the parties had bifurcated the case and that they could conduct discovery on the equal protection claims later. The Board's counsel then stated, "I don't think the [FHAA] claim is actually a Chapter 77 claim at all" but he had packaged it that way and was "stuck with it." The bottom line, when the court again asked the parties whether they wanted a hearing, was that, for different reasons, neither thought a hearing was necessary or desirable.

The district court, in an attempt to get some facts as a basis for its decision, asked who owns the group homes. The Board, in a response that reveals the absence of a factual record in this appeal, replied that it did not know which ones it owns, that lots of houses are subject to the Code, and that some are owned by a support group and some are owned by private landlords. The district court then expressed its concern with the Board's standing and the undeveloped fact record: "That would seem to suggest to having a full hearing on standing and—and the interest that people have because these are safety

7

issues, developing that record more fully as to whether or not it is or is not a denial of access to housing."

The district court also noted its concern with the unusual procedural posture of the case. It discussed the fact that the parties had agreed to bifurcate the issues and did not seek a ruling on the Board's equal protections claims. The district court asked whether the parties wanted it to certify its decision under K.S.A. 60-254(b), which provides that a district court that intends to enter final judgment on less than all claims must expressly certify in the original journal entry that there is no just reason for delay and that the entry of judgment is a final judgment. Both parties responded yet neither asked for certification under K.S.A. 2020 Supp. 60-254(b).

The court then gave the parties one last opportunity for a fact hearing:

"THE COURT: Okay. Well I appreciate your comments. None of you—neither side thinks that we, at this point, need to set anything for the future because the case is—
"MR. FORD: I don't.
"MR. PASCHANG: No, Your Honor.
"THE COURT: Issues fully briefed, been argued over objection, but you presented your arguments. So at this point it's just under advisement for decision, and then you'll decide where to go from that decision. Is that right?
"MR. FORD: We will."

The district court then concluded the arguments. Although the district court had the authority to remand the case to the agency and direct the parties to hold a hearing for the purpose of establishing a factual basis in the agency record—K.S.A. 77-619(b)—it did not do so, in accordance with the parties' stated desires.

The district court's later ruling on the petition for judicial review noted, "[t]o say that this case is in a confusing procedural posture would be an understatement."

8

The court expressed concern with whether the Board has exhausted its administrative remedies under the KJRA but found "[t]here appears to be no real factual dispute regarding the properties impacted, the new requirements imposed, the circumstances of the residents, or the actions taken by the Fire Marshal."

As to Count 1, it upheld the Fire Marshal's agency action, finding its adoption and enforcement of the Code was authorized by Kansas state law and not ultra vires. As to Count 2, the district court found that the Fire Marshal's acts did not discriminate against individuals with intellectual and developmental disabilities in violation of the FHAA. It found that the Fire Marshal did not disparately treat individuals with intellectual and developmental disabilities, its acts did not have a disparate impact, and its denial of the requested accommodations was reasonable. And in keeping with the parties' desires, the district court made no ruling on Count 3—the Board's equal protection claim.

The Board appeals. We allowed InterHab, Inc., to file an amicus curiae brief.

*Do We Have Jurisdiction Over This Appeal?*

An appellate court has a duty to question jurisdiction on its own initiative and must dismiss the appeal if the record shows a lack of jurisdiction. *State v. Delacruz*, 307 Kan. 523, 529, 411 P.3d 1207 (2018). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016).

The right to appeal is purely statutory and is not contained in the United States or Kansas Constitutions. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609-10, 244 P.3d 642 (2010). Appellate courts do not have discretionary power to entertain appeals from all district court orders. *Flores Rentals, L.L.C. v. Flores*, 283 Kan. 476, 481, 153

P.3d 523 (2007). Rather, appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Smith*, 304 Kan. at 919.

As the Board represented in its brief, the parties agreed in district court to go forward only on the Board's KJRA and FHAA claims while leaving the Board's other claim for future discovery, producing an informal stay of the unappealed claims. The unusual procedural posture of this appeal thus results from counsel's intentional trial strategy. But the parties' tacit agreement that we have subject matter jurisdiction does not give us jurisdiction.

"[P]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. *Padron v. Lopez,* 289 Kan. 1089, 1106, 220 P.3d 345 (2009)." *Bartlett Grain Co. v. Kansas Corporation*, 292 Kan. 723, 726, 256 P.3d 867 (2011).

The Board's petition for review was filed under Chapter 77. That Chapter contains its own statute governing review by a higher court: "Decisions on petitions for judicial review of agency action are reviewable by the appellate courts as in other civil cases." K.S.A. 77-623. We have rejected the suggestion that appeals from decisions on petitions for judicial review are sui generis so they can be appealed piecemeal. *Goldman v. Univ. of Kansas*, 52 Kan. App. 2d 222, 226, 365 P.3d 435 (2015). Rather, the plain language of K.S.A. 77-623 requires us to determine appellate jurisdiction over a decision on a KJRA petition in the same manner that we determine jurisdiction in appeals from civil cases under Chapter 60. See *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 524, 802 P.2d 516 (1990) ("From the outset we recognize that appellate review of an agency action is . . . as in other civil cases. K.S.A. 77-623."). We thus apply the general rules of Chapter 60 about finality of decisions and consider the Board's KJRA claims to be appealable to the same extent they would be appealable were they Chapter 60 claims in its petition.

10

The record shows that this appeal is not authorized as an interlocutory appeal under K.S.A. 2020 Supp. 60-2102(c), as the judge did not state in his order that the order involves a controlling question of law on which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The record also shows that the district court did not certify its entry of judgment under K.S.A. 2020 Supp. 60-254(b), although it offered to do so. Nor does the collateral order doctrine apply. See generally *Svaty*, 291 Kan. at 611-12.

Our appellate jurisdiction must then be based on a final decision which disposes of the entire action. "[T]he appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from: . . . [a] final decision in any action." K.S.A. 2020 Supp. 60-2102(a)(4). In its docketing statement, the Board cites solely this subsection as its statutory authority for this appeal. A final decision is "'one which finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court.'" *Plains Petroleum Co. v. First Nat. Bank of Lamar*, 274 Kan. 74, 82, 49 P.3d 432 (2002) (quoting *State ex rel. Bd. of Healing Arts v. Beyrle*, 262 Kan. 507, Syl. ¶ 2, 941 P.2d 371 [1997]).

Here, the agency, the State Fire Marshal, took final action on the Board's request for an accommodation and gave notice to the Board of its right to petition for judicial review. The Board properly petitioned for review with the district court. But the parties then asked the district court to bifurcate the proceedings and invited the district court to make a final decision as to the KJRA claims and FHAA claims only. The Board's equal protection claim remains undecided. That claim, Count 3 of the Board's petition, is undeniably part of the "action" the Board filed in district court, see K.S.A. 2020 Supp. 60-202 (mandating only one form of action); K.S.A. 2020 Supp. 60-203 (describing an action as commencing with the filing of a petition with the clerk of the court). So the

11

district court's decision on the Board's KJRA and FHAA claims is not a final decision in the action from which an appeal may be taken as a matter of right. See *In re Adoption of Baby Girl P.*, 291 Kan. 424, 429, 242 P.3d 1168 (2010) ("When a district court bifurcates an action and delays ruling on some part of the matter before it, the case usually becomes ripe for appeal only when the district court enters final judgment on all pending issues. *Cf. McCain v. McCain*, 219 Kan. 780, 783, 549 P.2d 896 [1976].").

Kansas appellate courts have a clear policy against piecemeal appeals. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014). Intermediate and piecemeal appeals tend to extend and prolong litigation, contrary to the goal of securing the just, speedy, and inexpensive determination of every action. *Connell v. State Highway Commission*, 192 Kan. 371, 374, 388 P.2d 637 (1964); see also *Cooke v. Gillespie*, 285 Kan. 748, 754, 176 P.3d 144 (2008) (finding that piecemeal appeals are frowned on in Kansas). We thus lack jurisdiction to hear this appeal.

Dismissed.