**John GAMBLE; Fie A. Gamble; Life Care Residences, Inc., doing business as Oak Hill Residential Care, Plaintiffs–Appellants,**

v.

**CITY OF ESCONDIDO, Defendant–Appellee.**

No. 95-56019.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 10, 1996.*

Decided Jan. 10, 1997.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Charles D. Nachand, Law Offices of Charles D. Nachand, Escondido, California, for the plaintiff-appellant.

Jeffrey R. Epp, City Attorney, Escondido, California, for the defendant-appellee.

Before: BRUNETTI, TROTT and THOMAS, Circuit Judges.

## OPINION

THOMAS, Circuit Judge:

John Gamble, Fie Gamble, and Life Care Residences, Inc. ("Gamble") sought to construct a complex for physically disabled elderly adults in a single-family residence area in Escondido, California. The City of Escondido ("City") denied the building permit application because the proposed building was too large for the lot and did not conform in size and bulk with the neighborhood structures. The district court granted the City summary judgment on the Fair Housing Act, equal protection, and due process claims. We affirm.

## BACKGROUND

Fie and John Gamble own several parcels of land in Escondido, California. In 1987, the City granted the Gambles a conditional use permit for one of their parcels of land allowing construction of up to six facilities to care for the physically disabled, with each facility having a capacity maximum of twelve persons. Only two buildings, each of approximately 5,000 square feet in size, have been erected.

Gamble proposed to construct a 10,360 square foot, eight bedroom, twelve bathroom structure for the physically disabled elderly on a different parcel of land. The upper

portion of the building was designed to house fifteen elderly disabled adults; the lower to serve as an adult day care facility. Day care patients from throughout Escondido would be transported to and from the center each day by van. A ten-car lot would provide parking. Surrounding homes in the neighborhood were significantly smaller than the proposed complex.

The City Planning Department concluded that the building would not be typical for a single-family residence and notified Gamble that the proposed size of the structure and number of occupants required a conditional use permit. Gamble then applied for a conditional use permit and simultaneously sought to increase the capacity for his previously authorized care facilities.

The size and bulk of the proposed structure continued to be an issue in the permit review process. The City's Design Review Board considered Gamble's application at two meetings and recommended denial. The Planning Commission held a public hearing, after which it recommended denial of the application based on the size of the structure, the design, the lack of amenities, and the inadequacy of parking. Gamble appealed the Planning Commission's decision to the City Council which referred the application back to the Design Review Board to allow Gamble an additional opportunity to redesign the building.

Gamble revised the building elevations and site plan, but the building size and capacity remained the same. The Design Review Board reviewed the revised application, but still recommended that the application be denied. The Planning Commission held a hearing on the matter and again recommended denial of the conditional use permit.

Gamble appealed to the City Council, which held a public hearing. After a significant number of people testified movingly about the need for facilities for the physically challenged, the City Council voted to approve the application. However, in response to the concerns voiced by neighbors, the City Council agreed to reconsider the matter at a subsequent hearing. At this hearing, the City Council denied Gamble's conditional use permit application for the proposed new building and approved Gamble's application to increase the capacity of his other residence care facilities.

Gamble filed suit in the Southern District of California alleging violations of the Fair Housing Act, the Equal Protection Clause, and the Due Process Clause. The district court granted summary judgment. Gamble appeals.

## ANALYSIS

■ We review a grant of summary judgment de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). Summary judgment is appropriate when the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511.

## I. THE FAIR HOUSING ACT CLAIMS

■ We apply Title VII discrimination analysis in examining Fair Housing Act ("FHA") discrimination claims. "Most courts applying the FHA, as amended by the [Fair Housing Act Amendments], have analogized it to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., which prohibits discrimination in employment." *Larkin v. Michigan Dep't of Social Servs.,* 89 F.3d 285, 289 (6th Cir.1996); *see Pfaff v. United States Dep't of Hous. & Urban Dev.,* 88 F.3d 739, 745 n. 1 (9th Cir.1996) ("We may look for guidance to employment discrimination cases.").

■ Thus, a plaintiff can establish an FHA discrimination claim under a theory of disparate treatment, *Ring v. First Interstate Mortgage, Inc.,* 984 F.2d 924, 926 & n. 2 (8th

Cir.1993), or disparate impact, *Pfaff*, 88 F.3d at 745 & n. 1. Additionally, a plaintiff may sue under section 3604(f)(3)(B) of the Fair Housing Act Amendments ("FHAA") if a local municipality refuses to make reasonable accommodations for handicapped housing. *City of Edmonds v. Washington State Bldg. Code Council*, 18 F.3d 802 (9th Cir.1994), *aff'd sub nom. City of Edmonds v. Oxford House, Inc.,* —— U.S. ——, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Gamble alleges claims of discrimination under each of these theories.

### A. *Disparate Treatment under the Fair Housing Act*

■ We analyze FHA and FHAA disparate treatment claims under Title VII's three-stage *McDonnell Douglas/Burdine* test.[1] *Ring*, 984 F.2d at 926; *see Soules v. United States Dep't of Hous. & Urban Dev.,* 967 F.2d 817, 822 (2d Cir.1992).

■ To bring a disparate treatment claim, the plaintiff must first establish a prima facie case. Adapted to this situation, the prima facie case elements are: (1) plaintiff is a member of a protected class; (2) plaintiff applied for a conditional use permit and was qualified to receive it; (3) the conditional use permit was denied despite plaintiff being qualified; and (4) defendant approved a conditional use permit for a similarly situated party during a period relatively near the time plaintiff was denied its conditional use permit. *See Ring*, 984 F.2d at 928; *Soules*, 967 F.2d at 822; *Secretary, United States Dep't of Hous. & Urban Dev. ex rel. Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir. 1990). *See also Banerjee v. Board of Trustees*, 648 F.2d 61, 62 (1st Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) (formulating the "relatively near to the time" fourth prong in a tenure denial case).

Second, if the plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Blackwell*, 908 F.2d at 870; *Soules*, 967 F.2d at 822; *see also Lam v. University of Hawai'i*, 40 F.3d

1551, 1559 (9th Cir.1994) (same, in the employment discrimination context).

Third, if the defendant satisfies its burden, the plaintiff must prove by a preponderance of evidence that the reason asserted by the defendant is a mere pretext. *Blackwell*, 908 F.2d at 870; *Soules*, 967 F.2d at 822; *see also Lam*, 40 F.3d at 1559 (same, in the employment discrimination context).

■ "Proof of discriminatory motive is crucial to a disparate treatment claim." *Familystyle of St. Paul, Inc. v. City of St. Paul*, 728 F.Supp. 1396, 1401 (D.Minn.1990) (importing an employment discrimination standard into a housing discrimination case), *aff'd,* 923 F.2d 91 (8th Cir.1991). *See also Lam*, 40 F.3d at 1559 (9th Cir.1994) (observing, in the employment discrimination context, that "[o]n summary judgment, the existence of a discriminatory motive for the employment decision will generally be the principal question").

■ Initially, we note that on its face, Gamble's complaint does not present a prima facie case because he does not allege that the City granted a permit to a similarly situated party relatively near the time the City denied his permit. Gamble does allege the existence of other large structures in the vicinity, such as an apartment complex, a mobile home park, and a multistory church. Neither the complaint nor the record, however, informs us of the dates on which permits for these structures were granted, or whether other factors, such as the composition of the city council or the related zoning ordinances, had changed since the prior permits were granted.

■ However, we do not need to determine whether Gamble has presented a prima facie case because his claim fails under subsequent steps in the *McDonnell Douglas/Burdine* analysis. For the purposes of this examination, we move to stage two and conclude that the reason the City advances for its decision, concern for the character of the neighborhood, is legitimate and nondiscriminatory.

---

1. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas*

*Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

At stage three, the burden shifts to Gamble to present evidence that this reason is pretextual, which he fails to do. Gamble presents no colorable evidence that would suggest that the City's proffered reason for denying his permit was a mere pretext for discriminating against the handicapped or elderly.

■ Further, the record is devoid of any evidence of intent or motive to discriminate. Gamble's argument that discrimination was evidenced by the City forcing him to go through the conditional use permit process lacks merit because the City could have denied Gamble's original application as being out of character for the neighborhood even if he never applied for the conditional use permit. *Guinnane v. San Francisco City Planning Comm'n*, 209 Cal.App.3d 732, 257 Cal. Rptr. 742, *cert. denied*, 493 U.S. 936, 110 S.Ct. 329, 107 L.Ed.2d 319 (1989); *Desmond v. County of Contra Costa*, 21 Cal.App.4th 330, 25 Cal.Rptr.2d 842 (1993).

Therefore, because Gamble presents no evidence that the City's stated reason for denying his permit was pretextual or that demonstrates the existence of discriminatory motive, we hold the district court appropriately granted summary judgment on Gamble's intentional discrimination claim.

### B. *Disparate Impact Claims under the Fair Housing Act*

■ To establish a prima facie disparate impact case, a plaintiff must establish "'at least that the defendant's actions had a discriminatory effect.'" *Pfaff*, 88 F.3d at 745 (quoting *Keith v. Volpe*, 858 F.2d 467, 482 (9th Cir.1988), *cert. denied*, 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989)). The *Pfaff* court, by analogy to Ninth Circuit age discrimination law, identified the following elements of an FHA prima facie case under a disparate impact theory: "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Id.* (quotation and modifications of the quotation omitted). Demonstration of discriminatory intent is not required under disparate impact theory. *Id.* at 745–

46, 746 n. 2. However, a plaintiff must "'prove the discriminatory impact at issue; raising an inference of discriminatory impact is insufficient.'" *Id.* at 746 (quoting *Palmer v. United States*, 794 F.2d 534, 538–39 (9th Cir.1986)).

■ Gamble fails to establish a prima facie case because he has presented no statistics or other proof demonstrating that the City's permit practices have a significantly adverse or disproportionate impact on the physically disabled or elderly.

Gamble argues that there is a great need for an adult day health care facility in the community, and thus the permit denial causes a significantly adverse effect on the disabled. A great community void may exist for lack of a health facility, but that absence alone is not actionable. It is only for discriminatory housing practices that the FHA provides a remedy. *See id.* at 744 (noting that the FHA's "stated policy" is "'to provide, within constitutional limitations, for fair housing throughout the United States'" (quoting 42 U.S.C. § 3601)(1968)). Gamble has provided no statistical or other evidence demonstrating that the lack of an adult health care facility results in discriminatory housing for the physically challenged.

■ Gamble further argues that the physically disabled require group housing to be solvent financially and that such group houses generally must be larger than other single family residences to accommodate the greater numbers. Therefore, he reasons, denial of permits for large houses on small lots in single family neighborhoods disproportionately and significantly affects the physically challenged.

This argument also fails to establish a prima facie case. First, Gamble has advanced no evidence that such a discriminatory effect occurs or that it occurs significantly. "Under the disparate impact theory, a plaintiff must prove actual discriminatory effect, and cannot rely on inference." *Id.* at 747 n. 3. Second, the position relies on a comparison between physically disabled groups and single families to establish the discriminatory effect. The relevant comparison group to determine a discriminatory effect on the

physically disabled is other groups of similar sizes living together. Otherwise, all that has been demonstrated is a discriminatory effect on group living.[2] *See Doe v. City of Butler,* 892 F.2d 315, 323 (3d Cir.1989) ("We agree that the fact that the ordinance will have an impact on group homes established for abused women does not alone establish discriminatory effect, because the resident limitations would have a comparable effect on males if the transitional dwelling was established for a different group, such as, for example, recovering male alcoholics."). No evidence has been presented suggesting that the City's permit denial practices disproportionately affect disabled group living as opposed to other kinds of group living.

### C. *FHA Reasonable Accommodation Claims*

■ A municipality commits discrimination under section 3604(f)(3)(B) of the FHA if it refuses "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [the physically disabled] equal opportunity to use and enjoy a dwelling." A dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b).

■ These portions of the statute affirmatively require the City to make reasonable accommodations for handicapped residences. *See City of Edmonds,* 18 F.3d at 806; *Turning Point, Inc. v. City of Caldwell,* 74 F.3d 941, 945 (9th Cir.1996).

The statute does not, however, require reasonable accommodation for health care facilities. The record establishes that a significant portion of the building size is devoted to the proposed adult health care facility. It occupies nearly half the square footage of the

building and the bottom floor of the two-story building.

If the health care facility were necessary to house the physically challenged living in the building, reasonable accommodation might be construed to include the health care complex. *See Bronk v. Ineichen,* 54 F.3d 425 (7th Cir.1995) (holding that if a deaf tenant needed a hearing dog to live in a building, section 3604(f)(3)(B) could require the building owner to relax the rule prohibiting animals). Gamble has not alleged, however, that this health facility is required in order to house the physically challenged on the upper level. Instead, Gamble has touted the health care facility as a community-wide resource to be used during the day by the physically disabled of Escondido at large.

Therefore, we find that Gamble has failed to state a claim under section 3604(f)(3)(B) because the accommodation demanded is due in significant part to the adult day health care facility for which accommodation is not required under the statute.

## II. EQUAL PROTECTION AND DUE PROCESS CLAIMS

■ The physically disabled are not a protected class for purposes of equal protection under the Fourteenth Amendment. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). Thus, rational basis scrutiny is appropriate. Rational basis scrutiny also is appropriate for Gamble's due process claim. *Munoz v. Sullivan,* 930 F.2d 1400, 1404 n. 10 (9th Cir.1991). "[T]he rational basis test is identical under the two rubrics [of equal protection and due process].…" *Id.* at 1404.

■ The City's actions satisfy rational basis scrutiny. Zoning concerns are recognized as legitimate governmental goals, *see Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 386–88, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926), and the City's permit denial practices were rationally related to achieving its zoning goals.

---

**2.** If a significant correlation exists between being disabled and living in group houses, a disparate impact on group housing could conceivably establish a prima facie disparate impact claim. No evidence has been presented, however, that establishes a significant correlation between being disabled and living in group housing.

Gamble maintains that if another, non-disabled group had applied for a conditional use permit the City would have granted its permit application, and thus the rational basis test has not been met. The record is devoid of any evidence that would support Gamble's supposition. Therefore, we decline to grant relief on this claim.

The judgment of the district court is AFFIRMED.