Tom REYNOLDS and Debbie Reynolds, individually and d/b/a/Energy Plus, Inc, a Colorado limited partnership, Plaintiff,

v.

QUARTER CIRCLE RANCH, INC., Mueller Ranch Homeowners Association, Inc., a Colorado Non-profit corporation; Randy Witte, Director, President of Mueller Ranch Homeowners Association, Inc.; Polly Munson, Director, Member of the Architecture Control Committee, of Mueller Ranch Homeowners Association, Inc.; Pat Jahner, Director and Secretary of Mueller Ranch Homeowners Association, Inc.; Marsha Witte, Treasurer of Mueller Ranch Homeowners Association, Inc.; Phred Jahner, Member of the Architectural Control Committee of Mueller Ranch Homeowners Association, Inc.; Ellen Cordoniere, Member of the Architectural Control Committee of Mueller Ranch Homeowners Association, Inc.; William A. Munson, Member of the Architectural Control Committee of Mueller Ranch Homeowners Association, Inc.; and John McKnight, Member of the Architectural Control Committee of Mueller Ranch Homeowners Association, Inc., Defendants.

No. CIV.A. 00–K–2460.

United States District Court, D. Colorado.

Sept. 1, 2003.

Donita Bernadette Rolle–Jackson, Donita Rolle–Jackson, Atty. at Law, Patrick Nealsen Smith, Patrick N. Smith, Atty. at Law, Colorado Springs, CO, for plaintiffs/counter–defendants.

Edwin S. Kahn, Kelly/Haglund/Garnsey & Kahn LLC, Jeffrey J. Richards, Anstine, Hill, Richards & Simpson, Denver, CO, Rita L. Booker, Harris, Karstaedt, Jamison & Powers, P.C., Englewood, CO, for defendants/counter–claimant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

### I. *Introduction*

Defendants Quarter Circle M Ranch, Mueller Ranch Homeowners Association ("HOA"), Randy Witte, Polly Munson, Marsha Witte, Ellen Cordioniere, William A. Munson, and John A. McKnight ("HOA Defendants"), and Pat and Phred Jahner ("Jahners") each seek summary judgment, pursuant to Fed. R. of Civ. P. 56, on all of Plaintiffs' claims against them. Plaintiffs Tom and Debbie Reynolds, together with their privately-held business entity Energy Plus Corporation ("Energy Plus"), originally asserted six claims against Defendants, all of which were dismissed by order dated January 10, 2001 for lack of subject matter jurisdiction.[1] Plaintiffs appealed, and the Tenth Circuit reversed the determination that all of the Plaintiffs' claims were barred under the doctrine of res judicata. The Court of Appeals concluded Plaintiffs' discrimination-based claims (I, II, & V) were not barred, and remanded the case for their consideration.[2]

---

1. I granted Defendants' motion to dismiss, concluding I lacked jurisdiction to proceed because the judgment entered in a previous state lawsuit, filed by the Homeowners' Association, barred the action.

2. While Plaintiffs dispute the scope of the claims at issue on remand, the Tenth Circuit's decision makes clear that Plaintiffs' appeal, and the Court's remand, was limited to their discrimination-based claims. *Reynolds v. Quarter Circle M Ranch*, No. 01–1094, 2001 WL 1478627, *1 & n. 1 (10th Cir.(Colo.) Oct. 23, 2001).

Specifically, these claims are for violations of the Fair Housing Act (42 U.S.C. § 3601, et. seq.) ("FHA"); the Civil Rights Act of 1866 (42 U.S.C. §§ 1981, 1982); and the Colorado Fair Housing Law (C.R.S. § 24-34-501, et. seq.) ("CFHL").

Plaintiffs' discrimination-based claims arose from their attempts to gain Architectural Committee ("AC") approval of plans to build a home on their land. Plaintiffs, who are an interracial couple, submitted four different sets of plans to the AC, all of which were rejected. Given the circumstance surrounding the rejection of their plans, the Reynolds maintain Defendants' conduct was based on Mr. Reynolds' race.

Jurisdiction over Plaintiffs' discrimination-based claims under the FHA and 42 U.S.C. §§ 1981, 1982 exists under 28 U.S.C. § 1331. Supplemental jurisdiction over the CFHL claim exists under 28 U.S.C. § 1367.

The Supreme Court set forth a burden-shifting framework to assist analysis of discrimination cases in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* test was articulated as a means of presenting and analyzing circumstantial evidence in discrimination cases where direct evidence of discriminatory intent is unlikely to be forthcoming. To survive a motion for summary judgment using the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discriminatory intent. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995) (applying the *McDonnell Douglas* test). Once the plaintiff does so, the burden of going forward shifts to the defendant, who must provide a facially legitimate, nondiscriminatory reason for his actions. The burden then shifts back to plaintiff, who has the opportunity to create an inference of discriminatory intent by showing defendant's proffered reason is but a pretext for discrimination. *Id.* Applying this standard to the evidence elicited by Plaintiffs in support of their claims, I find Plaintiffs have met their burden of establishing the first and second prongs of the *McDonnell Douglas* test and deny Defendants' Motion for Summary Judgment.

## II. *Background*

Plaintiffs Tom and Debbie Reynolds are owners of Energy Plus. In August 1998, Energy Plus became record owner of site number six in Mueller Ranch, an unincorporated subdivision in El Paso County, Colorado. After quitclaiming the site to themselves personally, the Reynolds in October 1998 began plans to build on the property. Between January 2000 and November 2000, the AC rejected four different sets of architectural plans submitted by the Reynolds, an action the Reynolds claim was taken not because of any legitimate problems with the plans, but because Tom Reynolds is African American.

In 1995, Mueller Ranch established covenants, one of which formed the AC. The AC's purpose is to review proposed building improvements to be sure they comply with the covenants. Plaintiff Debbie Reynolds was appointed a member of the AC and elected Secretary of the HOA on October 20, 1998. The parties dispute the actual process of architectural plan approval as practiced by the AC.

When Debbie Reynolds was first appointed to the AC, it consisted of three members: Reynolds, Defendant Phred Jahner, and Defendant John McKnight. On January 5, 2000, the HOA added two additional members to the AC, Defendants Ellen Cordioniere and William Munson. In November 2000, counsel for Plaintiffs received notice that Debbie Reynolds and William McKnight had been removed from the AC.

No architectural plans for homes were submitted during Debbie Reynolds' tenure on the AC apart from those submitted by her husband. Defendant Mr. Witte, however, submitted plans for his home just before Debbie Reynolds was appointed to the AC and his home was built between October 1998 and February 1999.

In August 1999, Defendant Phred Jahner stopped by the Reynolds' home to have plans for a loafing shed approved. This was the first time any of the Defendants had met Tom Reynolds. Debbie Reynolds gave her approval for Jahner's plans at her home, and committee member McKnight gave his approval over the phone. Plaintiffs attempted to follow this same informal process in seeking approval for the plans for their house. Tom Reynolds, a draftsman, asked Phred Jahner to approve plans he had drawn up for his own house on November 30, 1999, but Jahner refused, asking to keep the plans in order to review them. Tom Reynolds did not leave his plans with Jahner due to concerns about confidentiality. The AC rejected these plans in January 2000, and sent Plaintiffs a letter outlining the plans' insufficiencies.

Plaintiffs submitted a second set of plans in February 2000. These, too, were rejected by the AC, this time based on the requirement that plans had to be professionally drawn. The Reynolds proceeded anyway, and HOA filed a lawsuit against them in state court for commencing work on their new home without AC approval. As they neared the end of this suit, it was acknowledged by both sides that only small issues remained before the AC could approve Plaintiffs' third set of plans. Nevertheless, in August 2000, the AC rejected the Reynolds' third set of plans.

The Reynolds then had a final set of plans professionally drawn, and submitted them to the AC for approval in November 2000. This fourth set of plans was also rejected.

While Plaintiffs were waiting for approval of their fourth set of plans, several other homeowners in Mueller Ranch submitted plans to build structures other than houses on their land. These included plans for loafing sheds, barns, fences, and signs. All of these were approved with the exception of applications submitted by the Reynolds for signs, fencing, a loafing shed, and a barn. Plaintiffs' plans for these other structures were rejected due to nonconformance with the covenants and the submission of plans not in accordance with procedure.

Plaintiffs also allege several incidents of vandalism and surveillance on their property after they sought approval of their building plans. They were subjected to special surveillance, had property stolen from their lot, caught Defendant Phred Jahner on their property, and some of their property was vandalized. Plaintiffs reported these incidents to the police.

### III. *Applicable Standard for Review*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the Court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). "Particularly, the party opposing the motion is entitled to have his affidavits generously construed." *Jensen v. United States*, 662 F.2d 664, 667 (10th Cir.1981).

■ The Tenth Circuit applies the three-part burden of proof analysis established in *McDonnell Douglas* to FHA and § 1982 claims. *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir.1989). As set forth above, to avoid summary judgment a plaintiff must first establish a prima facie case of discrimination and, assuming defendant proffers a facially nondiscriminatory reason for its actions, then produce evidence demonstrating that proffered reason was pretextual. *Randle*, 69 F.3d at 451 ("If the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason ... was pretextual—i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial."). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwartz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

■ Thus, at the summary judgment stage under the *McDonnell Douglas* framework, "a showing of pretext *is* evidence which allows a jury to infer discriminatory intent. Consequently, because a jury may find illegal discrimination upon nothing more than a prima facie case and pretext, such a showing ... is sufficient to get the case to the jury." *Randle*, 69 F.3d at 451 (emphasis original).

## IV. *Merits*

### A. *Plaintiffs' Prima Facie Case*

1. *Elements.*

The establishment of the elements of a prima facie case under the FHA will also establish a prima facie case for all of Plaintiffs' related claims. *Asbury*, 866 F.2d at 1279 (10th Cir.1989). Accordingly, only those elements necessary to establish a prima facie case for an FHA claim are examined below.

■ To establish their prima facie case, the Reynolds must show that:

1) they are members of a protected class;

2) they submitted adequate plans for AC approval;

3) their application was rejected; and

4) other similarly situated applicants were treated more favorably.

*See id.* These elements roughly correspond to those enunciated for Title VII claims in *McDonnell Douglas*, for "[t]he prima facie case is a flexible standard that may be modified to relate to different factual situations." *Randle*, 69 F.3d at 451 n. 13.

■ "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Flexibility is essential to the approach: "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). It is in this light that Plaintiffs' evidence and affidavits must be examined.

2. *Plaintiffs have made out a prima facie case.*

Only the second and fourth elements of a prima facie case under the FHA are disputed in Defendants' Motion for Summary Judgment. Specifically, Defendants deny Plaintiffs' submitted plans were adequate and that similarly situated applicants were treated more favorably.

### a. The adequacy of Plaintiffs' building plans

Defendants assert each set of Plaintiffs' building plans was inadequate under the Mueller Ranch covenants, and have provided an expert report stating that the AC was operating within the bounds of propriety in rejecting them. (Jahner Defs.' Br. Supp. Mot. Summ. J. at 8 & Ex. 4.) Plaintiffs contend their plans were adequate, particularly as the process of applying for approval progressed. They state they followed all instructions, made all changes requested by the AC with each set of plans, and eventually paid an architect to draft their final two submissions to the AC. (Pls.' Resp. HOA Defs' Mot. Summ. J. at 5–8.) Nevertheless, no apotheosis of architectural plans was realized—at least according to the Mueller Ranch AC.

Plaintiffs rely solely on their own affidavits to rebut the conclusion of Defendants' expert that Plaintiffs' plans—all four sets of them—were inadequate. While it is true Plaintiffs "must do more than assert conclusory allegations" in order to avoid summary judgment (HOA Defs.' Br. Supp. Mot. Summ. J. at 5) (quoting *Bell v. Mike Ford Realty Co.,* 857 F.Supp. 1550, 1559 (S.D.Ala.1994)), I disagree Plaintiffs' affidavits constitute mere conclusory allegations. Rather, Plaintiffs' affidavits include factual representations that, should a jury find them credible, would give rise to an inference that their plans were not inadequate. (Pls.' Resp. HOA Defs.' Mot. Summ. J., Ex. B, ¶¶ 14, 15, 30.) For example, at ¶ 14 of the affidavit, Plaintiffs assert the fourth set of plans they submitted contained an architect's seal.

The difference in the parties' opinions on the adequacy of the plans submitted presents a genuine issue of material fact. While Defendants have proffered an expert opinion in an affidavit, "affidavits are to be used only to present the available facts, and not to decide the factual issues which might be presented." *McCullough Tool Co. v. Dresser Indus.,* 395 F.2d 230, 236 (10th Cir.1968). Additionally, the Supreme Court has stated "[expert] opinions..., even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. This is true of opinion evidence generally, whether addressed to a jury... or to a judge...." *Sartor v. Ark. Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944). Although more substantial evidence from Plaintiffs, such as an affidavit from the architect who drafted the plans, or the plans themselves, is desirable, it is not necessary to demonstrate the existence of a material factual dispute as to the adequacy of Plaintiffs' building plans. Plaintiffs' affidavits adequately rebut Defendants' expert, particularly considering "the party opposing the motion [for summary judgment] is entitled to have his affidavits generously construed." *Jensen,* 662 F.2d at 667 (citing 10B Charles A. Wright & Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2738 at 708 (1973)). Because I must construe the evidence in favor of the non-moving party, and because the burden of establishing a prima facie case is not onerous, Plaintiffs' assertion of the adequacy of their building plans satisfies the second requirement of a prima facie case for their FHA claim.

### b. More favorable treatment for similarly situated applicants.

Defendants also assert Plaintiffs fail to state a prima facie case because they cannot demonstrate that another similarly situated party was treated more favorably within the same general time period. Plaintiffs respond by pointing out that others were more favorably treated in their applications to build structures other

than homes, and that the Wittes submitted plans which were approved just before Debbie Reynolds' appointment to the AC. Defendants' argument is based on the assumption that Plaintiffs must be able to demonstrate disparate treatment of persons in a factually identical situation as they were in order to satisfy the requirements of a prima facie case. The "similarly situated" requirement, however, is not as rigid as Defendants suggest.

■ The Seventh Circuit has refused to follow the argument that a plaintiff has not established a prima facie case because he does not provide sufficient evidence of similarly situated parties receiving more favorable treatment. In *Allen v. Muriello,* the court commented on the fourth prong of the prima facie case in summary judgment motions: "courts should neither narrow *McDonnell Douglas's* application such that no one is similarly situated, nor broaden its application such that no one is disparately treated." 217 F.3d 517, 522 (7th Cir.2000). This is sound advice when approaching differential treatment in FHA claims, particularly considering "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Just as in Title VII cases, the requirement of producing evidence of a similarly situated party does not mean the plaintiff must produce an identical match: "When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; the violations need only be of 'comparable seriousness.'" *Elmore v. Capstan,* 58 F.3d 525, 530 (10th Cir.1995) (citing *EEOC v. Flasher Co.,* 986 F.2d 1312, 1316 (10th Cir.1992)).

Defendants rely primarily on *Gamble v. City of Escondido,* 104 F.3d 300 (9th Cir. 1997), and *Bangerter v. Orem City Corp.,* 46 F.3d 1491 (10th Cir.1995), to support their assertion that Plaintiffs have not established a prima facie case due to their failure to present any similarly situated parties who were treated more favorably. These cases are readily distinguishable from the case at hand. In *Gamble,* the plaintiff had applied for a building permit to construct a large facility designed to house and care for elderly disabled adults. 104 F.3d at 303–04. The proposed structure was to be 10,360 square feet, and the City concluded that it would not be appropriate for the neighborhood, which was zoned single-family residential. *Id.* The court initially noted that, on its face, plaintiff's complaint did not show a similarly situated party being treated more favorably, but only the existence of other large structures in the vicinity. *Id.* at 305. The court, however, does not rely on this for its holding: "[W]e do not need to determine whether [the plaintiff] has presented a prima facie case because his claim fails under subsequent steps in the *McDonnell Douglas/Burdine* analysis." *Id. Gamble,* therefore, falls short of the proposition for which Defendants cite it.

*Bangerter* is also easily distinguished, for it was appealed to the Tenth Circuit after being dismissed by the district court for failure to state a claim under Fed. R.Civ.P. 12(b)(6). 46 F.3d at 1502. The plaintiff in *Bangerter,* a mentally disabled adult, alleged that the city's zoning requirements for a group home for the mentally disabled violated the FHA. *Id.* at 1494. In reversing the lower court's dismissal of the case, the Tenth Circuit stated that one of the issues for remand was proof of differential treatment in the form of evidence showing that the plaintiff's group home was treated in a different manner from other group homes in the area. *Id.* at 1502. The Tenth Circuit recognized the requirement of showing a similarly situated party being treated more favorably at the next level of trial, but did

not further define or narrow the requirement. *Bangerter,* too, is weak authority for Defendants' position in this case.

While the Reynolds cannot submit evidence that other homes were approved during the same time period their plans were rejected because no other plans for homes were submitted to the AC during this time, they do submit evidence showing differential treatment with respect to plans for structures other than homes. Plaintiffs' plans for fencing, a loafing shed, and a barn, along with their plans for a sign on their property, were all rejected by the AC, while plans for barns, sheds, fences, and signs for other property owners in Mueller Ranch were all approved. Defendants deny this fact can be used to establish a prima facie case on Plaintiffs' FHA claim because these structures do not fall under the statutory definition of "dwelling" under 42 U.S.C. § 3602(b)("[A]ny building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, *a residence,* . . . and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.") (emphasis added).

I note the FHA and the term "dwelling" used in it have been generously construed by the courts. *Lauer Farms, Inc. v. Waushara County Bd. Adjustment,* 986 F.Supp. 544, 559 (E.D.Wis.1997). Summer bungalows, *United States v. Columbus Country Club,* 915 F.2d 877 (3d Cir.1990), farm labor camps, *Hernandez v. Ever Fresh Company,* 923 F.Supp. 1305 (D.Or. 1996), an AIDS hospice, *Baxter v. City of Belleville, Illinois,* 720 F.Supp. 720 (S.D.Ill.1989), a children's home, *United States v. Hughes Memorial Home,* 396

F.Supp. 544 (W.D.Va.1975), a homeless shelter, *Woods v. Foster,* 884 F.Supp. 1169 (N.D.Ill.1995), a nursing home, *Hovsons, Inc. v. Township of Brick,* 89 F.3d 1096 (3d Cir.1996), a cooperative apartment building, *Robinson v. 12 Lofts Realty, Inc.,* 610 F.2d 1032 (2d Cir.1979), and a migrant workers' camp, *Lauer Farms, supra,* have all been construed to be "dwellings" under the FHA. Although barns and loafing sheds are not included on this list, allowing the differential treatment experienced by the Plaintiffs with respect to these structures to function as evidence for the fourth prong of the prima facie case comports both with the generous construction given the term "dwelling," as well as the liberal approach to the establishment of a prima facie case under the *McDonnell Douglas* analysis in the first instance.[3]

Finally, Plaintiffs point out Defendants Randy and Marsha Witte submitted plans for a house in October 1998, before Debbie Reynolds was appointed to the AC. These were approved, and the Witte's house was built by February 1999. Although the members of the AC were different at the time the Wittes' house plans were approved, the treatment they experienced at the hands of the AC is certainly more favorable than that experienced by Plaintiffs, and they submitted their plans only one year before Plaintiffs began trying for AC approval. Neither of the Wittes, I note, was African American or otherwise a member of a protected class.

With all this in mind, Plaintiffs' evidence of differential treatment, including the rejection of their plans for outbuildings and the approval of the Wittes' house, is sufficient to show more favorable treatment of

---

**3.** Additionally, I note the CFHL applies a broader definition of the term "housing," and is also applicable to this case: "[A]ny building, structure, vacant land, or part thereof offered for sale, lease, rent, or transfer of

ownership. . . ." C.R.S. § 24–34–501. Outbuildings such as barns and sheds easily qualify under the CFHL's plain language as "housing" for the purpose of establishing differential treatment.

a similarly situated party. Thus, Plaintiffs have satisfied all four requirements for establishing a prima facie case.

### B. *Defendants' Non-discriminatory Reason for their Actions*

 Following the *McDonnell Douglas* framework, after Plaintiffs have established a prima facie case, the burden of production shifts to the Defendants. Defendants' burden of production at this stage is fairly easily met:

> The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [decision]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. However, the proffered reason for the action taken against the [plaintiff] must be reasonably specific and clear.

*Flasher,* 986 F.2d at 1316.

Defendants' valid, non-discriminatory reason for their rejection of Plaintiffs architectural plans is that the plans were inadequate and did not satisfy the Mueller Ranch covenants. As proof of this, Defendants offer their expert's affidavit outlining the inadequacies of Plaintiffs' plans. This is a facially legitimate reason, and is reasonably specific and clear. Defendants thus satisfy their burden under *McDonnell Douglas.*

### C. *Plaintiffs' Evidence of Pretext.*

 Once the defendant has met its burden of production at the summary judgment stage, "it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the [defendant's] proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle,* 69 F.3d at

451. Defendants again rely on *Gamble* to support their assertion that Plaintiffs have not and can not produce evidence to show that their legitimate reason for rejecting Plaintiffs' plans was pretextual. The Ninth Circuit in *Gamble* based its decision to grant the defendant's motion for summary judgment on the plaintiff's inability to meet his burden of establishing pretext: "[The plaintiff] presents no colorable evidence that would suggest that [the defendant's] proferred reason for denying his permit was a mere pretext for [discrimination]". 104 F.3d at 306.

 In our circuit, however, it is recognized that even where plaintiff presents no evidence other than pretext to show that the defendant acted with a discriminatory motive, "disbelief of the defendant's articulated reasons for its action, together with a prima facie case, can establish unlawful discrimination." *Randle,* 69 F.3d at 452 (citing *Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1379–81 (10th Cir.1994)). To prove defendant's nondiscriminatory reason was pretext, the plaintiff "need neither prove [the defendant's] proferred reasons were false, nor that a discriminatory factor was the sole motivating factor in the... decision." *Elmore,* 58 F.3d at 530 (internal citations omitted). If the plaintiff produces enough inferential evidence of discrimination from which the jury *may* make a finding of discriminatory animus from pretext, summary judgment is inappropriate. *Randle,* 69 F.3d at 452 n. 15. Once a basis for pretext has been raised by the plaintiff, "[t]he ultimate factual determination of whether the [defendant's] decision was motivated by intentional discrimination based upon protected class characteristics is for the trier of fact." *Elmore,* 58 F.3d at 530.

 The Reynolds have introduced several facts that might establish pretext. Examining the evidence in a light most

favorable to Plaintiffs, they have cast doubt on Defendants' proffered reason for their decision by asserting that their plans were in fact adequate and professionally drawn. Plaintiffs' evidence of other homeowners receiving approval for their outbuildings while plans for theirs were rejected similarly casts doubt on Defendants' assertion. Additionally, Plaintiffs have testified to incidents of vandalism, theft, and surveillance that may add to an inference of race-based animus. While there is no evidence that any of these acts were perpetrated by Defendants, apart from Plaintiff Tom Reynolds catching Defendant Phred Jahner on his property taking pictures, these incidents, together Plaintiffs' other testimony and evidence of pretext, make summary judgment inappropriate in this case.

## V. *Conclusion.*

Plaintiffs have carried their burden under the *McDonnell Douglas* framework to survive Defendants' motions for summary judgment. Because the standard of review for summary judgment favors the non-movant, and the burden of proving a prima facie case is not onerous, Plaintiffs should be allowed to present their case to a jury.

That is not to say that Plaintiffs' case would not benefit from additional evidence regarding the adequacy of their building plans. I initially considered setting this case for oral argument so Plaintiffs might flesh out their evidence and convince me or not of its sufficiency. After further considering the evidence in the light most favorable to Plaintiffs, however, I conclude Defendants' motions should be denied and that oral argument would therefore be superfluous.